PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MALLOYN V. ROBINSON, | ) | CASE NO. 4:14CV1229 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| AT&T, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |

*Pro se* Plaintiff Malloyn Robinson filed this action under Title VII, 42 U.S.C. §2000e against her former employer, AT&T. In the Complaint, Plaintiff alleges her co-workers harassed her and created a hostile work environment which led to her termination for poor work performance. She seeks monetary relief. Because Plaintiff fails to state a federal cause of relief, however, Plaintiff's Complaint before the Court is dismissed.

Plaintiff also filed an Application to Proceed *In Forma Pauperis*. ECF NO. 2. That Application is granted.

## I. Background

Plaintiff's Complaint is written as a diary. It appears from these entries that Plaintiff worked in the AT&T call center. The individuals mentioned in the diary are identified only by first name.[1] There is no indication of their official position within the company or the call center.

---

[1] Handwritten portion of complaint mentions the last names of two persons referred to as "management," Deena Yaist and Shelley Bradley.

(4:14cv1229)

Plaintiff's first entry is dated March 14, 2012.  She indicates Eleny and Tawyna were singing a song about a chicken.  ECF No. 1-1 at 1.  She indicates she has a hearing aid which enables her to increase the volume to hear things that were not meant for her to hear.  ECF No. 1-1 at 1.  She states that on April 22, 2012, she was in a training class when she heard Luz say that her hair smelled.  ECF No. 1-1 at 1.  Thereafter, Plaintiff claims her co-workers walked behind her desk to smell her hair.  ECF No. 1-1 at 1.

Plaintiff further alleges her co-workers accused her of looking at them in a sexually suggestive manner and either behaved provocatively toward her, or covered up in her presence.  She claimed some of her female co-workers walked by her desk in a manner that accentuated their breasts.  ECF No. 1-1 at 1.  Others dressed in revealing clothing.  ECF No. 1-1 at 1.  She claims other co-workers crossed and uncrossed their legs while sitting at their desks.  ECF No. 1-1 at 1.  She claimed one co-worker swung her hair.  ECF No. 1-1 at 1.  She claims Kathy accused her of looking at her breasts, but Plaintiff indicates Kathy was wearing a low cut shirt and leaned over Plaintiff's desk in a manner that exposed her cleavage.  ECF No. 1-1 at 1.  She claims Marlene and Tawyna watched her and huddled with friends in a sexual manner.  ECF No. 1-1 at 2.  She contends if she looked up from her desk, she was accused of looking at her co-workers.  ECF No. 1-1 at 6.  At other times, co-workers covered themselves or pulled their jackets closed when Plaintiff passed by.  ECF No. 1-1 at 7.  Plaintiff contends she found the situation to be so stressful that she put her head down and closed her eyes when she walked around the office.  She indicates she even walked from her car to her desk with her eyes closed.  ECF No. 1-1 at 8.  She states she relied on her other senses to get

2

(4:14cv1229)

around.  ECF No. 1-1 at 8.

Plaintiff claims her co-workers "play[ed] in their hair" and "picked" to annoy her.  She states Lisa was sitting on David's desk "playing in her hair" on September 5, 2012.  ECF No. 1-1 at 3.  She asked her to stop because she had snacks and a drink on her desk and she did not want hair to get on those items.  ECF No. 1-1 at 3.  Lisa responded that she was not bothering Plaintiff.  ECF No. 1-1 at 3.  On September 6, 2012 and September 10, 2012, Plaintiff recorded in her diary that Lisa was again "playing in her hair."  ECF No. 1-1 at 3.  Thereafter, between April 26, 2013 and July 1, 2013, Plaintiff recorded multiple instances of female co-workers "playing in [their] hair," and  "making gestures," while walking past Plaintiff's desk, sitting in a team meeting, or stretching at their desks.  ECF No. 1-1 at 7.  At other times, Plaintiff records that her co-workers were "picking."  ECF No. 1-1 at 7.  She claimed the co-worker on one side of her was "picking" and "standing up like she is doing something."  ECF No. 1-1 at 7.  She indicates Deena, Luann and other ladies from out of town were "picking" at a meeting.  ECF No. 1-1 at 5.

She claims her co-workers watched her and signaled each other with knocks and bangs at their desks.  She claims "Randy, Deb and John" circled her and watched her on July 24, 2012.  ECF No. 1-1 at 2.  She contends she was watched all day by people on October 15, 2012.  ECF No. 1-1 at 3.  She claims Robin had something in her drawer on April 20, 2013 because she kept opening and closing it.  She states Kristen watched her that same day.  ECF No. 1-1 at 4.  She recorded that Robin looked at her all day on April 20, 2013 and shook her desk so Plaintiff's papers and stuffed animals would fall.  She claims Robin knocked on her desk to signal Kristen.  ECF No. 1-1 at 4.  She alleges

3

(4:14cv1229)

a surveillance camera was positioned toward her on April 21, 2013 and followed her from station to station.  ECF No. 1-1 at 4.  She recorded that everyone at a meeting was watching her and making gestures on May 13, 2013 and on May 31, 2013.  ECF No. 1-1 at 5.  She contends Marvin knocked his desk when she sat up in her chair on June 3, 2013, and three women walked around the office to see if she looked at them.  ECF No. 1-1 at 6.  She claimed that on June 17, 2013, another co-worker walked in her area for no reason.  ECF No. 1-1 at 6.  She records others looking at her on June 29, 2013, July 1, 2013, July 6, 2013, July 7, 2013, July 9, 2013, July 12, 2013, July 16, 2013 and July 19, 2013.  ECF No. 1-1 at 7-10.

Plaintiff even notes times when she felt followed outside of the office.  She contends she bought cardboard boxes at Wal-mart and the next day a co-worker commented that she must like cardboard.  ECF No. 1-1 at 8.  On another occasion, she was at Wendy's for lunch and felt that the man behind her in line was watching her.  She claims the woman behind the counter shook her head up and down to the man behind her.  ECF No. 1-1 at 10.  She states she began to notice people she did not recognize following her around everywhere including church, the flea market, the doctor's office, the dentist office, in restaurants, and in clubs.  ECF No. 1-1 at 9.

Finally, Plaintiff claims she was not supported in her work.  She lists several occasions when she had an escalated call and signaled for help but none was offered to her.  ECF No. 1-1 at 4.  At other times, she claimed her supervisors scrutinized her work and wrote her up for making mistakes.  ECF No. 1-1 at 6.  She states she did not pass a test on July 19, 2013.  ECF No 1-1 at 10.  She states "normally you don't have to retake the test," suggesting she was given another opportunity to receive

4

(4:14cv1229)

a passing score.  ECF No. 1-1 at 10.  She contends they were looking for a reason to fire her.  ECF No. 1-1 at 10.  She indicates she received an email thirty minutes later asking her to meet in Litsa's office.  ECF No. 1-1 at 10.  Litsa stated she had listened to a few of Plaintiff's phone calls and she did not like them.  ECF No. 1-1 at 10.  She then told Plaintiff she was fired.

Plaintiff lists four legal claims: (1) hostile work environment; (2) defamation; (3) retaliation; and (4) sexual orientation.  The Court liberally construes her first, third and fourth claims as arising under Title VII.  Plaintiff seeks $1,200,000.00 in damages "to repair [her] reputation", $465,000.00 in lost wages, and unspecified damages for pain and suffering.

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U.S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the Plaintiff has stated a claim upon which relief can be granted,

5

(4:14cv1229)

the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough fact to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.  Law and Analysis

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

(4:14cv1229)

sex, or national origin." 42 U.S.C. § 2000e–2(a).  Title VII, however, is not "a general civility code for the American workplace." *Burnett v. Tyco Corp*., 203 F.3d 980, 982 (6th Cir. 2000)(quoting *Oncale v. Sundowner Offshore Services, Inc*., 533 U.S. 75, 80 (1998)).  It does not provide a cause of action for all acts of unprofessional or harassing behavior in an employment setting.  The critical issue in any Title VII inquiry is whether members of a protected class are exposed to disadvantageous terms or conditions of employment, which members who are not of that class are not exposed.  *Oncale*, 533 U.S. at 80.

### A. Hostile Work Environment

Plaintiff first claims her co-workers at AT&T created a hostile work environment.  To state a claim under Title VII for a hostile work environment, Plaintiff must demonstrate that (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on her membership in the protected group, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.  *Williams v. CSX Transp. Co., Inc.,*  643 F.3d 502, 510 -13 (6th Cir. 2011).  While Plaintiff details incidents in which she felt harassed, she fails to establish that the alleged harassment was based on criteria prohibited by Title VII.

None of Plaintiff's allegations suggest her co-workers targeted her for harassment because of her race, gender, religion or national origin.  She indicates that she is African-American, but none of the allegations of misconduct suggest that she was targeted because of her race.  In fact, she

7

(4:14cv1229)

indicates that some of her harassers were African-American as well.  Similarly, while she is female, she does not allege facts indicating her co-workers harassed her on the basis of her gender.  She contends both men and women watched her at the office, followed her, "played in [their] hair," were "picking" on her, walked by her desk, knocked into her desk, and signaled each other.  She does not allege she received disparate treatment in her job because she is female.

It is possible Plaintiff may be asserting she was harassed on the basis of her perceived sexual orientation.  She denies being gay, but claims her co-workers taunted her and intimated she was a lesbian.  Under Title VII, sexual orientation is not a protected classification.  *Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 471 (6th Cir. 2012); *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 762 -70 (6th Cir. 2006).  *See Oncale*, 523 U.S. at 81 ("Title VII does not prohibit harassment in general or of one's homosexuality in particular.").  Therefore, harassment or discrimination based upon a person's sexual orientation cannot form the basis of a cognizable claim under Title VII.  *Kalich*, 679 F.3d at 471.

Instead, Plaintiff appears to be claiming she was subjected to general harassment.  While Plaintiff may feel this harassment created a hostile work environment, these actions are only a violation of federal law if the harassment is based on criteria prohibited by Title VII or another federal statute.  The actions Plaintiff details in her Complaint, accepted as true and construed in her favor, do not support a federal cause of action.

### B. Retaliation

Plaintiff also asserts a claim for retaliation against AT&T.  Title VII contains an

8

(4:14cv1229)

anti-retaliation provision.  The statute provides in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a).  To state a *prima facie* case for retaliation under Title VII, Plaintiff must allege facts suggesting: (1) she engaged in activity protected under Title VII; (2) her exercise of her protected rights was known to Defendant; (3) an adverse employment action was subsequently taken against her or she was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009).  Here, there are no allegations suggesting Plaintiff engaged in a protected activity.  She indicates she informed Shelly that others in the office were behaving badly toward her, and Shelly told her to quit complaining or she would be the one fired.  Plaintiff does not allege she reported violations of Title VII to her employers and therefore did not engage in protected activity.  There is no suggestion that an adverse action was taken against her because she complained of Title VII violations or pursued rights under Title VII.

The Court is aware that, at this stage, Plaintiff is not required to plead her discrimination claims with heightened specificity.  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-14 (2002).  Nevertheless, the Supreme Court later clarified that a plaintiff must still provide "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  *See Iqbal*, 550 U.S. at 678 (2009) ("[A] complaint will [not] suffice if it tenders 'naked assertions devoid of further

9

(4:14cv1229)

factual enhancement.'") (quoting *Twombly*, 550 U.S at 557).  Recently, the Sixth Circuit explored the scope of *Twombly* and *Iqbal* noting that "even though a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegation in the complaint are true." *New Albany Tractor v. Lousiville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555.)

Plaintiff's Complaint does not rise above the level of speculation.  The Court is left to guess at the basis of the alleged discrimination.  Although she mentions her race and gender, she has not alleged facts to suggest that either of those traits were the basis for her co-workers' harassment.  The Complaint does not cross the threshold of basic pleading requirements in federal court.  *See* FED. CIV. R. 8 (complaint must provide "a short and plain statement of the claim" made by "simple, concise, and direct allegations."); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (legal conclusions alone are not sufficient to present a valid claim, and court is not required to accept unwarranted factual inferences).  Without more than conclusory statements suggesting the possibility of discrimination, Plaintiff's Complaint fails to state a federal claim for relief.

Finally, Plaintiff's defamation claim is a matter of state law.  Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court, however, may exercise discretion in hearing state

10

(4:14cv1229)

law matters.  *Id.* at 726.  In cases where the federal law claims are dismissed before trial, the state

law claims should also be dismissed.  *Id.*  Having dismissed Plaintiff's federal law claims, this Court

declines jurisdiction to hear her state law claim for defamation.

## IV.  Conclusion

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis*,  ECF No. 2, is granted

and this action is dismissed pursuant to 28 U.S.C. §1915(e).  The Court certifies, pursuant to 28

U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.


 November 14, 2014                          */s/ Benita Y. Pearson*
Date                                        Benita Y. Pearson
                                            United States District Judge

11